# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
### WORCESTER DIVISION

| | |
|---|---|
| Thomas BURKE; Randi BURKE; Joshua CHACKO; Asha CHACKO; Federico RAFFA; Melisa CUNNINGHAM; Ryan DORTCH; Melanie DORTCH; Suzanne HAYS; Frederick HAYS, JR.; Lawrence HETTINGER; Edie HUBER; Brian KING; Julia KING; Sean MURPHY; Kimberley MURPHY; Christopher KRUEGLER; and Gillian PRICE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) |
| 3M COMPANY (f/k/a Minnesota Mining and Manufacturing, Co.); AGC, INC. (f/k/a Asahi Glass Co.,Ltd.); AGC CHEMICAL AMERICAS, INC.;ARCHROMA MANAGEMENT, LLC; ARCHROMA U.S., INC.; ARKEMA, INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CHEMICAL COMPANY; CHEMICALS INCORPORATED; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; CHUBB FIRE, LTD.; CLARIANT CORPORATION; CORTEVA, INC.; DEEPWATER CHEMICALS, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION; E. I. DU PONT DE NEMOURS AND COMPANY; KIDDE PLC, INC.; KIDDE-FENWAL, INC.; NATIONAL FOAM, INC.; NATION FORD; RAYTHEON TECHNOLOGIES CORPORATION (f/k/a United Technologies Corporation); TYCO FIRE PRODUCTS LP (successor-in-interest to The Ansul Company); and UTC FIRE & SECURITY AMERICAS CORPORATION, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | |

Civil Case No.:

COMPLAINT
AND JURY DEMAND

1

## PLAINTIFFS' COMPLAINT

Plaintiffs, by and through their undersigned counsel, brings this action against Defendants 3M Company (f/k/a Minnesota Mining and Manufacturing, Co.), AGC, Inc. (f/k/a Asahi Glass Co., Ltd.), AGC Chemical Americas, Inc., Archroma Management, LLC, Archroma U.S., Inc., Arkema Inc., BASF Corporation, Buckeye Fire Equipment Company, Carrier Global Corporation, Chemdesign Products, Inc., Chemguard, Inc., Chemicals Incorporated, The Chemours Company, The Chemours Company FC, LLC, Chubb Fire, Ltd., Clariant Corporation, Corteva, Inc., Deepwater Chemicals, Inc., DuPont De Nemours, Inc., Dynax Corporation, E. I. Du Pont de Nemours and Company, Kidde PLC, Inc., Kidde-Fenwal, Inc., National Foam, Inc., Nation Ford Chemical Company, Raytheon Technologies Corporation, Tyco Fire Products, LP (individually and as successor-in-interest to The Ansul Company), and UTC Fire & Security Americas Corporation, Inc.  Plaintiffs hereby alleges, upon information and belief, as follows:

## I.    SUMMARY OF THE CASE

1.    Plaintiffs are residents of the Town of Harvard, Massachusetts who rely on private drinking water wells for their household and dietary water.  The Town lies due east of the former Fort Devens Army Base where aqueous film-forming foam ("AFFF") was used extensively.  Sampling on the former Base property, and in private wells nearby, detected significant levels of per- and polyfluoroalkyl substances ("PFAS") including, but not limited to, perfluorooctanoic acid ("PFOA") and/or perfluorooctane sulfonic acid ("PFOS").

2.    Plaintiffs are private well owners who reside in the area close to the Base. Plaintiffs seek to recover by this action the costs necessary to test and/or treat their private wells.

3.    At various times beginning from the 1960s through today, Defendants designed, manufactured, marketed, distributed, and/or sold PFOA, PFOS, the chemical precursors of

PFOA and/or PFOS, and/or AFFF containing PFOA, PFOS, and/or their chemical precursors (collectively, "Fluorosurfactant Products").

4.     PFOA and PFOS are manufactured compounds that are toxic and persistent in the environment, do not biodegrade, move readily through soil and groundwater, and pose a significant risk to human health and safety.

5.     Defendants manufactured, marketed and/or sold Flurosurfactant Products with the knowledge that these toxic compounds would be released into the environment during the intended use of these Products, when used as directed and intended by the manufacturer.

6.     At all relevant times, beginning decades ago and, upon information and belief, continuing to this date, Fluorosurfactant Products were sold, supplied, used, and disposed in the vicinity of the Plaintiffs' wells and water supplies.  During these activities, Fluorosurfactant Products were used as directed and intended by the manufacturers, which allowed PFAS, including but not limited to PFOA and PFOS, to enter the environment.  When used and disposed as intended, these compounds migrated through the soil and into the groundwater, thereby contaminating Plaintiffs' water supply.

7.     Defendants manufactured, marketed and/or sold Fluorosurfactant Products, including AFFF,  with the knowledge that these toxic compounds would be released into the environment during fire protection, training, and response activities even when the AFFF was used as directed and intended by the manufacturer.

8.     At all relevant times, beginning decades ago and, upon information and belief, continuing to this date, AFFF containing PFOS and/or PFOA has been used and stored at fire training facilities, airports, and military bases for fire protection, training, and response activities. During these activities, AFFF was used as directed and intended by the manufacturers, which

allowed PFOA and PFOS to enter the environment.  When sprayed onto outdoor surfaces as intended, these compounds migrated through the soil and into the groundwater, thereby contaminating Plaintiffs' water supply.

9.      As a result of the use of PFAS-containing products, including AFFF and others, for their intended purposes, PFAS chemicals contaminate the area near the Base where Plaintiffs own property and reside.

10.     Plaintiff file this lawsuit to recover compensatory and all other damages, including but not limited to the costs of designing, constructing, installing, operating and maintaining the treatment facilities and equipment required to comply with state and federal safe drinking water laws and to remove PFAS from the drinking water supplied to the public and/or for the costs of securing alternative sources of water as a result of the PFAS contamination, and to ensure that the responsible parties bear such expense, rather than the Plaintiffs.

## II.      PARTIES

### A. PLAINTIFFS

11.     Thomas Burke and Randi Burke own and operate a private water well at their residence in Harvard, Massachusetts.  A number of PFAS chemicals, including PFOA and/or PFOS, have been detected in their well.

12.     Joshua Chacko and Asha Chacko own and operate a private water well at their residence in Harvard, Massachusetts.  A number of PFAS chemicals, including PFOA and/or PFOS, have been detected in their well.

13.     Federico Raffa and Melisa Cunningham own and operate a private water well at their residence in Harvard, Massachusetts.  A number of PFAS chemicals, including PFOA and/or PFOS, have been detected in their well.

4

14. Ryan Dortch and Melanie Dortch own and operate a private water well at their residence in Harvard, Massachusetts. A number of PFAS chemicals, including PFOA and/or PFOS, have been detected in their well.

15. Suzanne Hays and Frederick Hays, Jr. own and operate a private water well at their residence in Harvard, Massachusetts. A number of PFAS chemicals, including PFOA and/or PFOS, have been detected in their well.

16. Lawrence Hettinger and Edie Huber own and operate a private water well at their residence in Harvard, Massachusetts. A number of PFAS chemicals, including PFOA and/or PFOS, have been detected in their well.

17. Brian King and Julia King own and operate a private water well at their residence in Harvard, Massachusetts. A number of PFAS chemicals, including PFOA and/or PFOS, have been detected in their well.

18. Sean Murphy and Kimberley Murphy own and operate a private water well at their residence in Harvard, Massachusetts. A number of PFAS chemicals, including PFOA and/or PFOS, have been detected in their well.

19. Christopher Kruegler and Gillian Price own and operate a private water well at their residence in Harvard, Massachusetts. A number of PFAS chemicals, including PFOA and/or PFOS, have been detected in their well.

20. Each Plaintiff has a property interest in the water it appropriates, and in its wells, piping, distribution system, and facilities (collectively referred to as "Plaintiffs' Property").

B. *DEFENDANTS*

21.     Upon information and belief, the following Defendants designed, manufactured, formulated, marketed, promoted, distributed, and/or sold the Fluorosurfactant Products that have and continue to contaminate Plaintiffs' Property.

22.     The following Defendants designed, manufactured, formulated, marketed, promoted, distributed, and/or sold the products that have contaminated and continue to contaminate Plaintiff's Property.

23.     **3M:** Defendant 3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 3M Center, St. Paul, Minnesota 55144. At all relevant times, 3M manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA and/or PFOS used to fight fires at numerous military bases, airports, and other locations throughout the country.

24.     3M is the only company that manufactured and/or sold AFFF containing PFOS.

25.     **AGC:** Defendant AGC, Inc. f/k/a Asahi Glass Co., Ltd. ("AGC"), is a corporation organized under the laws of Japan and does business throughout the United States. AGC has its principal place of business at 1-5-1, Marunouchi, Chiyoda-ku, Tokyo 100-8405 Japan.

26.     **AGC CHEMICAL AMERICAS:** Defendant AGC Chemical Americas, Inc. ("AGC America") is a Delaware corporation with its principal business office at 55 E. Uwchlan Avenue, Suite 201, Exton, Pennsylvania 19341. Upon information and belief, AGC America is a subsidiary of AGC, Inc., a Japanese corporation formerly known as Asahi Glass Company, Ltd.

27.     **ARCHROMA MANAGEMENT, LLC.:** Defendant Archroma Management, LLC, is a foreign limited liability company registered in Switzerland, with a principal business address of Neuhofstrasse 11, 4153 Reinach, Basel- Land, Switzerland.

28.     **ARCHROMA US:** Defendant Archroma U.S., Inc. ("Archroma US") is a Delaware corporation with its principal place of business located at 5435 77 Center Dr., #10, Charlotte, North Carolina 28217. Upon information and belief, Archroma U.S., Inc. is a subsidiary of Archroma Management, LLC, and supplied Fluorosurfactant Products for use in AFFF.

29.     **ARKEMA:** Defendant Arkema, Inc. is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Arkema, Inc. is an operating subsidiary of Arkema France, S.A.

30.     **BASF:** Defendant BASF Corporation ("BASF") is a Delaware corporation with its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932. Upon information and belief, BASF acquired Ciba-Geigy Corporation and/or Ciba Specialty Chemicals.

31.     **BUCKEYE:** Defendant Buckeye Fire Equipment Company ("Buckeye") is a foreign corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086. Buckeye is registered to do business in California. This Defendant manufactured and sold AFFF that contained PFOA.

32.     **CARRIER:** Defendant Carrier Global Corporation ("Carrier") is a Delaware corporation with its principal place of business located at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418.

33.     **CHEM INC.:** Defendant Chemicals Incorporated ("Chem Inc.") is a Texas corporation with its principal place of business located at 12321 Hatcherville Road, Baytown, Texas 77521.

34.     **CHEMDESIGN:** Defendant Chemdesign Products, Inc. ("ChemDesign") is a Texas corporation with its principal place of business located at 2 Stanton Street, Marinette, Wisconsin 54143.

35.     **CHEMGUARD:** Defendant Chemguard, Inc. ("Chemguard") is a corporation organized and existing under the laws of the State of Texas, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. Upon information and belief, this Defendant manufactured and sold AFFF that contained PFOA.

36.     **CHEMOURS:** Defendant The Chemours Company ("Chemours") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1007 Market Street, Wilmington, Delaware 19899.

37.     In 2015, DuPont spun off its "Performance Chemicals" business to Chemours, along with certain environmental liabilities. Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries arising from the manufacture and sale of PFAS compounds and products that contain PFAS compounds.

38.     **CHEMOURS FC:** Defendant The Chemours Company FC LLC ("Chemours FC"), successor in interest to DuPont Chemical Solutions Enterprise, is a Delaware limited liability company that conducts business throughout the United States, including the State of California. Its principal place of business is 1007 Market Street Wilmington, Delaware, 19899.

39.     **CHUBB:** Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210. Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to Chubb Fire & Security Ltd., Chubb Security, P.L.C., Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc. Chubb is part of UTC Climate, Controls & Security, a unit of United Technologies Corporation.

40.     **CLARIANT:** Defendant Clariant Corporation ("Clariant") is a New York corporation with its principal place of business located at 4000 Monroe Road, Charlotte, North Carolina 28205.

41.     **CORTEVA:** Defendant Corteva, Inc. ("Corteva") is a Delaware corporation with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

42.     **DEEPWATER:** Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation with its principal place of business located at 196122 E County Road 40, Woodward, Oklahoma 73801.

43.     **DUPONT:** Defendant E. I. Du Pont De Nemours and Company ("DuPont") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

44.     **DUPONT DE NEMOURS:** Defendant DuPont De Nemours, Inc. (f/k/a DowDuPont, Inc.) is a Delaware corporation with its principal place of business located at 974 Centre Road, Building 730, Wilmington, Delaware 19805. DowDuPont, Inc. was formed in 2017 as a result of the merger of Dow Chemical and DuPont.

45.     Upon information and belief, Corteva was originally formed in February 2018 as a wholly-owned subsidiary of DowDuPont, Inc. On June 1, 2019, DowDuPont, Inc. separated its agriculture business through the spin-off of Corteva. In doing so, DowDuPont, Inc. distributed all issued and outstanding shares of Corteva common stock to DowDuPont, Inc. stockholders by way of a pro-rata dividend. Upon information and belief, following that distribution, Corteva became the direct parent of DuPont, and holds certain DowDuPont, Inc. assets and liabilities.

46.     Following the June 1, 2019 spin-off of Corteva and of another entity, Dow, Inc., DowDuPont, Inc. changed its name to DuPont De Nemours, Inc. ("New DuPont"). Upon information and belief, New DuPont retained assets in the specialty products business lines, as well as the balance of the financial assets and liabilities of DuPont not assumed by Corteva.

47.     **DYNAX:** Defendant Dynax Corporation ("Dynax") is a Delaware corporation with its principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523. Upon information and belief, this Defendant manufactured Fluorosurfactant Products for use in AFFF.

48.     **KIDDE PLC:** Defendant Kidde P.L.C., Inc. ("Kidde P.L.C.") is a Delaware corporation with its principal place of business located at 9 Farm Springs Road, Farmington, Connecticut 06032. Upon information and belief, Kidde PLC was formerly known as Williams Holdings, Inc. and/or Williams US, Inc. and was part of UTC Fire & Security Americas Corporation, Inc.

49.     **KIDDE-FENWAL:** Defendant Kidde-Fenwal, Inc. ("Kidde-Fenwal") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at One Financial Plaza, Hartford, Connecticut 06101. Upon information and belief, Kidde was part of UTC Fire & Security Americas Corporation, Inc.  Furthermore, upon

information and belief, Kidde-Fenwal, Inc. is the successor-in-interest to Kidde Fire Fighting, Inc. (collectively, "Kidde/Kidde Fire").

50.     **NATIONAL FOAM:** Defendant National Foam, Inc. ("National Foam") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 141 Junny Road, Angier, North Carolina 27501. National Foam is a subsidiary of Angus International Safety Group, Ltd. Upon information and belief, National Foam manufactures the Angus brand of AFFF products. In addition, upon information and belief, this Defendant manufactured and sold AFFF that contained PFOA.

51.     **NATION FORD:** Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina corporation with its headquarters located at 2300 Banks Street, Fort Mill, South Carolina 29715.

52.     **RAYTHEON:** Defendant Raytheon Technologies Corporation (f/k/a United Technologies Corporation) ("Raytheon Tech f/k/a United Tech") is a Delaware corporation with its principal place of business at 10 Farm Springs Road, Farmington, Connecticut 06032.

53.     **TYCO:** Defendant Tyco Fire Products L.P. ("Tyco") is a limited partnership organized and existing under the laws of the State of Delaware with its principal place of business located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446.

54.     Tyco is an indirect subsidiary that is wholly owned by Johnson Controls International P.L.C., an Irish public limited company listed on the New York Stock Exchange

55.     Tyco manufactures the Ansul brand of products and is the successor-in-interest to the corporation formerly known as The Ansul Company ("Ansul") (hereinafter, Ansul and/or Tyco as the successor-in-interest to Ansul will be referred to collectively as "Tyco"). At all times

relevant, Tyco manufactured, marketed, promoted, distributed, and/or sold fire suppression products, including AFFF that contained fluorocarbon surfactants containing PFAS.

56.    **UTC:** Defendant UTC Fire & Security Americas Corporation, Inc. (f/k/a GE Interlogix, Inc.) ("UTC") is a Delaware corporation with its principal place of business at 13995 Pasteur Blvd., Palm Beach Gardens, Florida 33418.   Upon information and belief, UTC was a division of United Technologies Corporation.

57.    Upon information and belief, all foregoing Defendants were manufacturers and/or or sellers of AFFF and/or other Fluorosurfactant Products who manufactured, distributed, and/or sold AFFF and/or other Fluorosurfactant Products at all relevant times that were used on or near the Plaintiff's Property.

58.    Upon information and belief, many if not all of the foregoing Defendants have previously conducted and/or currently conduct business in the United States, including in the state of California. Additionally, many if not all of the foregoing Defendants are licensed to do business in the state of California.

59.    The term "Defendants," without naming any specific one, refers to all Defendants named in this Complaint jointly and severally. Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates, and divisions of the named Defendants. When reference is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

### III.    JURISDICTION AND VENUE

60.    This Court has jurisdiction pursuant to 28 U.S.C. §1332 because complete

diversity exists between Plaintiffs and Defendants, and the amount in damages exceeds the

minimal jurisdictional limits of this Court.  Plaintiffs are residents of Massachusetts.  No

Defendant was incorporated in, or maintains its principal place of business in, Massachusetts.

61.    Venue is proper in the United States District Court for the District of

Massachusetts pursuant to 28 U.S.C. § 1391 because it is the judicial district in which each

Plaintiff is a resident and citizen, a substantial part of the property that is the subject of this

action is situated in this judicial district, and a substantial part of the events or omissions giving

rise to this action occurred in this judicial district.

### IV.    FACTUAL ALLEGATIONS

62.    PFOA and PFOS are stable manmade chemicals in a family known as per- and

polyfluoroalkyl substances ("PFAS").  A PFAS is a chain of carbon atoms surrounded by

fluorine atoms.  PFOA and PFOS are PFAS with eight or more carbon atoms.  For this reason,

they are sometimes referred to as "C8."

63.    PFAS do not occur in nature.  Rather, they are stable, man-made chemicals.  They

are highly water soluble, persistent in the environment and resistant to biologic, environmental,

or photochemical degradation.  Because these compounds are water soluble and do not readily

adsorb to sediments or soil, they tend to stay in the water column and can be transported long

distances.

64.    PFOA and PFOS are readily absorbed in animal and human tissues after oral

exposure and accumulate in the serum, kidney, and liver.  They have been found globally in

water, soil, and air as well as in human food supplies, breast milk, umbilical cord blood, and

human blood serum.[1]

65.     PFOA and PFOS are persistent in the human body.  A short-term exposure can

result in a body burden that persists for years and can increase with additional exposures.[2]

66.     Since they were first produced, information has emerged showing negative health

effects caused by exposure to PFOA and PFOS.

67.     According to the EPA, "…studies indicate that exposure of PFOA and PFOS over

certain levels may result in…developmental effects to fetuses during pregnancy or to breastfed

infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular,

kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and

immunity), thyroid effects and other effects (e.g., cholesterol changes)."[3]

68.     EPA has also warned that "there is suggestive evidence of carcinogenic potential

for PFOS."[4]

---

[1] *See* Agency for Toxic Substances and Disease Registry, "Per- and Polyfluoroalkyl Substances and Your Health," available at https://www.atsdr.cdc.gov/pfc/health_effects_pfcs.html (last accessed Sept. 21, 2021).

[2] *See* EPA, "Drinking Water Health Advisory for Perfluorooctanoic Acid (PFOA)," EPA Document Number: 822-R- 16-005 (May 2016) at 55, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfoa_health_advisory_final-plain.pdf (last accessed Sept. 21, 2021); EPA, "Drinking Water Health Advisory for Perfluorooctane Sulfonate (PFOS)," EPA Document Number: 822-R-16-004 (May 2016) at 55, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_health_advisory_final_508.pdf (last accessed Sept. 21, 2021).

[3] *See* EPA, "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/sites/default/files/2016-06/documents/drinkingwaterhealthadvisories_pfoa_pfos_updated_5.31.16.pdf (last accessed Sept. 21, 2021).

[4] *See* EPA, "Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)," Document Number: 822 R-16-002, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed Sept. 21, 2021).

69.     EPA has noted that "drinking water can be an additional source [of PFOA/PFOS in the body] in the small percentage of communities where these chemicals have contaminated water supplies." In communities with contaminated water supplies, "such contamination is typically localized and associated with a specific facility, for example…an airfield at which [PFOA/PFOS] were used for firefighting."[5]

70.     The EPA has issued Health Advisory Values for PFOA and PFOS found in drinking water of 70 parts per trillion ("ppt"). When both PFOA and PFOS are found in drinking water, the combined concentrations should not exceed 70 ppt.

71.     PFOS and/or PFOA are primary components of Fluorosurfactant Products.

72.     Once PFAS, including PFOA and PFOS, are free in the environment they do not hydrolyze, photolyze, or biodegrade under typical environmental conditions, and they are extremely persistent in the environment.  As a result of their persistence, they are widely distributed throughout soil, air, and groundwater.

73.     The use of PFAS-containing products as directed and intended by the manufacturers allowed PFOA and PFOS to enter into and onto Plaintiffs' Property where these compounds migrated through the subsurface and into the groundwater, thereby contaminating the surface, soil, sediment and groundwater, as well as causing other extensive and ongoing damage to Plaintiffs' Property.

74.     Due to the chemicals' persistent nature, among other things, these chemicals have, and continue to, cause injury and damage to Plaintiffs' Property.

---

[5] *See* EPA, "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/sites/default/files/2016-06/documents/drinkingwaterhealthadvisories_pfoa_pfos_updated_5.31.16.pdf (last accessed Sept. 21, 2021).

75.      Aqueous Film-Forming Foam ("AFFF") is a water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports, among other places.

76.     The AFFF products made by Defendants contained either or both PFOA and PFOS.

77.     The AFFF produced, marketed  and/or sold by 3M was the only AFFF produced from fluorochemicals manufactured through electrochemical fluorination ("ECF"), a process that generates PFOS. All other Defendants used telomerization to produce AFFF; fluorochemicals made through telomerization degrade into PFOA, but not PFOS.

78.     AFFF can be made without PFOA and PFOS. Fluorine-free foams do not release dangerous PFOA and/or PFOS into the environment.

79.     AFFF is used to extinguish fires that are difficult to fight, particularly fires that involve petroleum or other flammable liquids. AFFF works by coating the ignited fuel source, preventing its contact with oxygen and suppressing combustion. AFFF is typically sprayed directly onto a fire.

80.     When used as the Defendants intended and directed, AFFF releases PFOA and/or PFOS into the environment.

81.     Once PFOA and PFOS are free in the environment, these chemicals do not hydrolyze, photolyze, or biodegrade under typical environmental conditions and are extremely persistent in the environment.  As a result of their persistence, they are widely distributed throughout soil, air, and groundwater.

82.     On information and belief, by the early 1980s, Defendants knew, or reasonably should have known, among other things, that: (a) PFOA and PFOS are toxic; and (b) when sprayed in the open environment per the instructions given by the manufacturer, PFOA and

PFOS readily migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

83.     Defendants also knew or reasonably should have known that PFOA and PFOS could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens that cause genetic damage.

84.     In 1980, 3M published data in peer reviewed literature showing that humans retain PFOS in their bodies for years. Based on that data, 3M estimated that it could take a person up to 1.5 years to clear just half of the accumulated PFOS from their body after all exposures had ceased.[6]

85.     By the early 1980s, the industry suspected a correlation between PFOS exposure and human health effects.  Specifically, manufacturers observed bioaccumulation of PFOS in workers' bodies and birth defects in children of workers.

86.     In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[7]

_____

[6] See EWG, "New Data on Half Life of Perfluorochemicals in Serum," available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades (last accessed Sept. 21, 2021) (in particular, please refer to the "Letter from 3M to Office of Pollution Prevention and Toxics," referenced in the online article).

[7] See id. (specifically, please refer the "C8 Blood Sampling Results, Births and Pregnancies" Memorandum referenced in the online article).

87.     Beginning in 1983, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers. In an internal memo, 3M's medical officer warned "we must view this present trend with serious concern. It is certainly possible that … exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[8]

88.     Based on information and belief, in 2000, under pressure by the Environmental Protection Agency ("EPA"), 3M announced that it was phasing out PFOS and U.S. production of PFOS; 3M's PFOS-based AFFF production did not fully phase out until 2002.

89.     From 1951, Dupont, and on information and belief, Chemours, designed, manufactured, marketed, and sold products containing PFOA, including Teflon nonstick cookware, and more recently  PFAS feedstocks, such as Forafac 1157 N, for the use in the maufacuture of AFFF products.

90.     Based on information and belief, in 2001 or earlier, Dupont manufactured, produced, marketed, and sold PFOA and/or PFAS feedstocks to some or all of the AFFF product manufacturers, which were included in their AFFF products that were discharged into the environment and contaminated Plaintiffs' drinking water supplies.

91.     DuPont had been studying the potential toxicity of PFOA since at least the 1960s and knew that it was contaminating drinking water drawn from the Ohio River and did not disclose to the public or to government regulators what they knew about the substance's potential effects on humans, animals, or the environment.

92.     By December 2005, the E.P.A. uncovered evidence that DuPont concealed the environmental and health effects of PFOA, and the E.P.A. announced the "Largest Environmental

---

[8] *See id.* (particularly, please refer to the "Organic Fluorine Levels" Memorandum referenced in the online article).

Administrative Penalty in Agency History." The E.P.A. fined DuPont for violating the Toxic Substances Control Act "Section 8(e)—the requirement that companies report to the E.P.A. substantial risk information about chemicals they manufacture, process or distribute in commerce."[9]

93.     By July 2011, DuPont could no longer credibly dispute the human toxicity of PFOA, which it continued to manufacture. The "C8 Science Panel" created as part of the settlement of a class action over DuPont's releases from the Washington Works plant had reviewed the available scientific evidence and notified DuPont of a "probable link"[10] between PFOA exposure and the serious (and potentially fatal) conditions of pregnancy-induced hypertension and preeclampsia.[11] By October 2012, the C8 Science Panel had notified DuPont of a probable link between PFOA and five other conditions—high cholesterol, kidney cancer, thyroid disease, testicular cancer, and ulcerative colitis.

94.     In July 2015, E.I. du Pont de *Nemours* spun off its *chemicals* division, creating *Chemours*, a new publicly-traded company named The Chemours Company, once wholly owned by DuPont. By mid- 2015, DuPont had dumped its perfluorinated chemical liabilities into the lap of the new Chemours Company.

95.     Defendants also knew or should have known that: (a) users of AFFF would likely include fire and rescue training organizations and their personnel; (b) fire and rescue personnel

---

[9] *See* EPA, Reference News Release, "EPA Settles PFOA Case Against DuPont for Largest Environmental Administrative Penalty in Agency History" (Dec. 14, 2005), https://www.epa.gov/enforcement/reference-news-release-epa-settles-pfoa-case-against-dupont-largest-environmental (last viewed on January 30, 2018).

[11] *See* The C8 Science Panel, "*Status Report: PFOA (C8) exposure and pregnancy outcome among participants in the C8 Health Project*," available at http://www.c8sciencepanel.org/pdfs/Status_Report_C8_and_pregnancy_outcome_15July2011.pdf (last accessed on Sept 21, 2021).

were foreseeable users of AFFF containing or degrading into PFOA and/or PFOS in both

training and real-life fire emergency scenarios; (c) PFOA and PFOS are dangerous to the

environment and human health if allowed to runoff or drain into groundwater; (d) fire and rescue

personnel foreseeably lacked knowledge of these dangers; and, (e) fire and rescue personnel

would require warnings of these dangers and/or affirmative instructions in the use of AFFF.

96.     Notwithstanding this knowledge, Defendants negligently and carelessly: (1)

designed, manufactured, marketed, purchased, supplied, and/or sold PFOA/PFOS, (2) issued

instructions on how AFFF should be used and disposed of (namely, by washing the foam into the

soil), thus improperly permitting PFOA and/or PFOS to contaminate the groundwater in and

around the Plaintiffs' wells; (3) failed to recall and/or warn the users of AFFF, negligently

designed products containing or degrading into PFOA and/or PFOS, of the dangers of

groundwater contamination as a result of standard use and disposal of these products; and, (4)

further failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF

containing PFOA and/or PFOS, notwithstanding the fact that Defendants knew the identity of the

purchasers of the PFOA/PFOS.

97.     As a direct result of Defendants' acts alleged in this Complaint, the Plaintiffs'

wells have been contaminated and will continue to be contaminated with PFAS including PFOA

and PFOS, creating a public health hazard, unless such contamination is remediated. As a direct

and proximate result, Plaintiffs must assess, evaluate, investigate, monitor, remove, clean up,

correct, and remediate PFOA and PFOS contamination in its wells at significant expenses, loss

and damage.

98.     Defendants had a duty and breached their duty to evaluate and test such products

adequately and thoroughly to determine their environmental fate and transport characteristics and

potential human health and environmental impacts before they sold such products. They also had a duty and breached their duty to minimize the environmental harm caused by PFOA and PFOS.

## THE IMPACT OF PFOA AND PFOS ON THE PLAINTIFFS' WELLS

99.     Each Plaintiffs' private well is contaminated with PFAS including PFOA and/or PFOS.

100.    The detection and/or presence of PFOA and PFOS, and the threat of further detection and/or presence of PFOA and PFOS, in Plaintiffs' wells in varying amounts and at varying times has resulted, and will continue to result, in significant injuries and damages to each Plaintiff.

101.    The invasion of the Plaintiffs' wells with PFOA and PFOS is recurring—new contamination flows regularly and constantly into the wells each day, resulting in new harm to the property on each occasion.

102.    The contamination of Plaintiffs' private wells with PFOA and/or PFOS renders their drinking water unfit for human consumption, poses significant risk to human health, and damages each Plaintiffs' property.  Each Plaintiff has been exposed to toxic chemicals via ingestion, inhalation, and skin absorption.  Each Plaintiff property damage requiring testing of the private well, remediation of contamination in and around the well and on Plaintiffs' real property, and restoration of Plaintiffs' property and water supplies to pre-contamination condition.

## FIRST CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY OF
### MERCHANTABILITY DEFECTIVE DESIGN

103.     Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this cause of action.

104.     Defendants were in the business of producing, making, fabricating, constructing, designing, marketing, and selling PFAS-containing products and/or AFFF containing PFOA and/or PFOS.

105.     All of Defendants' PFAS-containing products and/or AFFF products were manufactured for placement into trade or commerce.

106.     Defendants marketed and sold AFFF for use in controlling and extinguishing aviation, marine, fuel and other shallow spill fires.

107.     As manufacturers, Defendants owed a duty to all persons whom its products might foreseeably harm, including Plaintiffs, not to market any product which is unreasonably dangerous in design for its reasonably anticipated use.

108.     By manufacturing and selling PFAS-containing products and/or AFFF, Defendants warranted that such products were merchantable, safe, and fit for ordinary purposes.

109.     Defendants breached that warranty as PFAS-containing products and/or AFFF is unreasonably dangerous for their reasonably anticipated uses for the following reasons:

a.     PFAS including PFOA and PFOS cause extensive groundwater contamination, even when used in their foreseeable and intended manner;

b.     even at extremely low levels, PFAS including PFOA and/or PFOS render drinking water unfit for consumption;

c.     PFAS including PFOA and/or PFOS pose significant threats to public health; and,

d.     PFAS including PFOA and/or PFOS create real and potential environmental damage.

110.     Defendants knew of these risks associated with PFAS including PFOA and
PFOS, and failed to use reasonable care in the design of their PFAS-containing products and/or
AFFF products.

111.     PFAS-containing products and/or AFFF containing PFOA and/or PFOS pose
greater danger to the environment than would be expected by ordinary persons such as the
Plaintiffs and the general public.

112.     At all times, Defendants were capable of making PFAS-containing products
and/or AFFF that did not contain PFOA/PFOS.  Reasonable alternative designs existed which
were capable of preventing the Plaintiffs' damage.

113.     The risks posed by PFAS-containing products and/or PFOA/PFOS-containing
AFFF far outweigh the products' utility.

114.     The likelihood that PFAS-containing products and/or AFFF would be spilled,
discharged, disposed of, or released onto land and contaminate the Plaintiffs' property and the
gravity of that damage far outweighed any burden on Defendants to adopt an alternative design,
and outweighed the adverse effect, if any, of such alternative design on the utility of the product.

115.     As a direct and proximate result of Defendants' unreasonably dangerous design,
manufacture, and sale of PFAS-containing products and/or AFFF, Plaintiffs have suffered, and
continue to suffer, property damage requiring investigation, remediation, and monitoring costs to
be determined at trial.

116.     Defendants knew that it was substantially certain that its acts and omissions
described above would threaten public health and cause extensive contamination of property,
including groundwater collected for drinking.  Defendants committed each of the above
described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and

with conscious and/or reckless disregard for the health and safety of others, and for the Plaintiffs' property rights.

## **SECOND CAUSE OF ACTION**

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY FAILURE TO WARN

117.    Plaintiffs realleges and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

118.    As manufacturers of PFAS-containing products and/or AFFF, Defendants had a duty to provide adequate warnings of the risks of these products to all persons whom its product might foreseeably harm, including the Plaintiffs, the public, and public officials.

119.    PFAS-containing products and/or AFFF are unreasonably dangerous for their reasonably anticipated uses for the following reasons:

   a.  PFOA and PFOS cause extensive groundwater contamination, even when used in their foreseeable and intended manner;

   b.  Even at extremely low levels, PFOA and/or PFOS render drinking water unfit for consumption;

   c.  PFOA and/or PFOS pose significant threats to public health; and,

   d.  PFOA and/or PFOS create real and potential environmental damage.

120.    Defendants knew of the health and property damage risks associated with PFAS-containing products and/or AFFF, and failed to provide a warning that would lead an ordinary reasonable user or handler of a product to contemplate the dangers associated with PFAS-containing products and/or or an instruction that would have allowed Plaintiffs to avoid the damage to its property.

24

121.     Despite Defendants' knowledge of the environmental and human health hazards associated with the use and/or disposal of PFAS-containing products and/or AFFF in the vicinity of subterranean drinking water supplies, including contamination of public drinking water supplies with PFOA and/or PFOS, Defendants failed to issue any warnings, instructions, recalls, or advice regarding PFAS-containing products and/or AFFF to Plaintiffs, governmental agencies or the public.

122.     As a direct and proximate result of Defendants' failure to warn, Plaintiffs have suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

123.     Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of subterranean drinking water supplies.  Defendants committed each of the above described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the Plaintiffs' property rights.

## THIRD CAUSE OF ACTION

### NEGLIGENCE

124.     Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

125.     As manufacturers and sellers of PFAS-containing products and/or AFFF, Defendants owed a duty to Plaintiffs and to all persons whom its products might foreseeably harm to exercise due care in the formulation, manufacture, sale, labeling, warning, and use of PFAS-containing products and/or AFFF.

126.    Defendants knew or should have known that PFOA and/or PFOS were leaching from PFAS-containing products and/or AFFF used in as foreseen and intended.

127.    Despite the fact that Defendants knew that PFOA and PFOS are toxic, can contaminate water resources and are possible carcinogens, Defendants negligently:

    a.  designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold PFAS-containing products and/or AFFF;

    b.  issued instructions on how PFAS-containing products and/or AFFF should be used and disposed of, thus improperly permitting PFOA and/or PFOS to contaminate the groundwater in and around the Plaintiffs' wells;

    c.  failed to recall and/or warn the users of PFAS-containing products and/or AFFF of the dangers of groundwater contamination as a result of standard use and disposal of this product; and,

    d.  failed and refused to issue the appropriate warning and/or recalls to the users of PFAS-containing products and/or AFFF, notwithstanding the fact that Defendants know the identity of the purchasers of the PFAS-containing products.

128.    As a direct and proximate result of Defendants' negligence, Plaintiffs have suffered, and continue to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

129.    Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of subterranean drinking water supplies.  Defendants committed each of the above described acts and omissions

knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or

reckless disregard for the health and safety of others, and for the Plaintiffs' property rights.

## FOURTH CAUSE OF ACTION

### TRESPASS

130.     Plaintiffs reallege and reaffirm each and every allegation set forth in all

preceding paragraphs as if fully restated in this count.

131.     Each Plaintiff is the owner, operator, and actual possessor of real property and

improvements used for collecting drinking water.

132.     Defendants manufactured, distributed, marketed and promoted  PFAS-containing

products and/or AFFF with the actual knowledge and/or substantial certainty that PFAS-

containing products and/or AFFF would, through normal use, release PFOA and/or PFOS that

would migrate into subterranean groundwater, causing contamination.

133.     Defendants negligently, recklessly, and/or intentionally produced and marketed

PFAS-containing products and/or AFFF in a manner that caused PFOA and PFOS to

contaminate the Plaintiffs' property.

134.     As a direct and proximate result of Defendants' trespass, Plaintiffs have suffered

and continue to suffer property damage requiring investigation, remediation and monitoring costs

to be determined at trial.

135.     Defendants knew that it was substantially certain that its acts and omissions

described above would threaten public health and cause extensive contamination of property,

including groundwater collected for drinking.  Defendants committed each of the above

described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and

with conscious and/or reckless disregard for the health and safety of others, and for the Plaintiffs' property rights.

**FIFTH CAUSE OF ACTION**
FRAUDULENT TRANSFER
(Against DuPont and Chemours)

136.    Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

137.    Plainntiffs seek equitable and other relief pursuant to the Uniform Fraudulent Transfer Act against DuPont.

138.    Prior to and during 2015, Defendant Dupont was in the business of producing, making, fabricating, designing, marketing, and selling chemical feedstocks containing PFOA and/or chemicals that can degrade into PFOA and/or other PFAS as part of their "performance chemicals business."

139.    Upon information and belief, in February 2014, DuPont formed The Chemours Company as a wholly-owned subsidiary, and used it to spin off Dupont's "performance chemicals business" products line in July 2015.

140.    In addition to the transfer of the "performance chemicals business" products line, Chemours accepted broad assumption of liabilities for DuPont's historical use, manufacture, and discharge of PFOA and other PFAS.

141.    Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries from the manufacture, design, marketing and sale of PFOA or other PFAS components for the use in AFFF products.

142.    As a result of the transfer of assets and liabilities to Chemours described in this Amended Complaint, DuPont limited the availability of assets to cover judgements for all liability for damages and injuries from the manufacture, design, marketing, sale of PFOA or other PFAS components for the use in AFFF products.

143.    DuPont has (a) acted with intent to hinder, delay and defraud creditors, or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and (i) was engaged or was about to engage in a business for which the remaining assets of Chemours were unreasonably insufficient in relation to the business; or (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

144.    Upon information and belief, DuPont engaged in acts in furtherance of a scheme to transfer its assets out of the reach of creditors, such as Plaintiffs, that have been damaged as a result of DuPont's actions as described in this Amended Complaint.

145.    Upon information and belief, DuPont and Chemours acted without receiving a reasonably equivalent value in exchange for the transfer of obligations, and DuPont believed, or reasonably should have believed, that it would incur debts beyond Chemours' ability to pay as they became due.

146.    Plaintiffs seek to avoid the transfer of DuPont's liabilities for the claims brought in this Complaint and to hold DuPont jointly and severably liable for any damages or other remedies that may be awarded by this Court or a jury under this Complaint.

## **PRAYER FOR RELIEF**

Plaintiffs  respectfully pray for judgment against Defendants, jointly and severally, as follows:

1.    Compensatory damages according to proof including, but not limited to:

29

    a.   costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of PFAS/PFOA/PFOS contamination affecting each Plaintiffs' Property;

    b.   costs and expenses related to past, present, and future treatment and remediation of PFAS, PFOA and/or PFOS contamination of each Plaintiffs' Property;

    c.   costs and expenses related to past, present, and future installation and maintenance of monitoring mechanisms to assess and evaluate PFAS, PFOA and/or PFOS in each Plaintiffs' Property;

2.    Avoiding the transfer of DuPont's liabilities for the claims brought in this Amended Complaint;

3.    Punitive damages;

4.    Consequential damages;

5.    Pre-judgment and post-judgment interest;

6.    Any other and further relief as the Court deems just, proper, and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a jury trial.

Dated:   December 29, 2021

          /s/  *Richard M. Sandman*
          Richard M. Sandman (BBO # 440940)
          **RODMAN, RODMAN & SANDMAN, P.C**.
          442 Main Street, Suite 300
          Malden, MA   02148-5122
          Telephone:  (781) 322-3720

          **BARON & BUDD, P.C.**
          Scott Summy
          Carla Burke Pickrel

M. Cristina Sanchez
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX   75219-4281
Telephone:  (214) 521-3605

Philip F. Cossich, Jr.
**COSSICH, SUMICH, PARSIOLA
& TAYLOR, LLC**
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
(504) 394-9000

***Attorneys for Plaintiff***